**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**APRIL L. SELLERS**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIEVON N. NICHOLS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1307-CR-293 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Stephen R. Bowers, Judge
Cause No. 20D02-1208-FA-54

**January 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Defendant Tievon Nichols appeals his aggregate fifty-year executed sentence after pleading guilty to one count of Class A felony burglary, two counts of Class B felony robbery while armed with a deadly weapon, and one count of Class B felony criminal confinement. Nichols and three co-defendants broke into a residence, and, in the course of robbing its occupants, Nichols mock executed a mother and threatened to kill two children. Nichols argues that the trial court abused its discretion in ordering an enhanced sentence because there is insufficient evidence to support the court's findings that he was the co-defendant that mock executed the mother and threatened to kill the two children. We conclude that the trial court was within its discretion because the two adult victims testified at Nichols's sentencing hearing and identified Nichols as committing these acts. Nichols also argues that his sentence is inappropriate in light of the nature of his offenses and his character. Considering the terrorizing and torturous nature of Nichols's offenses, Nichols's active gang membership, and his escalating criminal history, we conclude that Nichols's sentence is not inappropriate. The judgment of the trial court is affirmed.

**FACTS AND PROCEDURAL HISTORY**

In the early morning hours of July 25, 2012, Nichols and three co-defendants broke into the residence of Jasmine Cataldo. At the time of the break-in, the residence was occupied by Jasmine, her three-year-old daughter, her sister Tikvah Cataldo, and Tikvah's six-year-old-son V.C. Jasmine was in an upstairs bedroom with her sleeping daughter, and Tikvah and V.C. were sleeping in a bedroom down the hall.

2

Brandishing a handgun, Nichols entered Jasmine's bedroom and demanded money and valuables from Jasmine, taking her iPhone, wallet, and keys. Two of the other co-defendants then entered, and together, the three tied Jasmine's hands together with the cord of a hairdryer, moved her to a room across the hall, and placed a shirt over her head. During this encounter, Nichols said to one of the co-defendants, "[I]f she gives you any s***, shoot the little girl in the bed[.]" Tr. p. 25. Shortly thereafter, Nichols dry fired his weapon at the back of Jasmine's head and then mockingly asked her, "[W]ant to try again?" Tr. p. 25. Nichols and one co-defendant then exited Jasmine's bedroom, leaving another co-defendant behind with Jasmine.

Nichols next entered Tikvah's bedroom, demanded money from Tikvah, and threatened to shoot her if she did not cooperate. This caused V.C. to cry out in fear, and Nichols told V.C. he would shoot him if he did not stop crying. Nichols took V.C.'s gaming system and exited the room. As he was exiting, Tikvah slammed Nichols's arm in the door several times. Nichols and his co-defendants then left the residence, and within minutes, Jasmine and Tikvah called 911.

Later that day, using the GPS in Jasmine's stolen iPhone, police tracked the phone to a car driven by Nichols's mother. Nichols's mother told police she did not know where the phone had come from, and she consented to a search of her apartment. Nichols also resided at the apartment and was found inside. From Nichols's bedroom, police recovered Jasmine's keys and a handgun matching the description of the weapon used in the robbery. Nichols was arrested and taken to the Elkhart County Juvenile Detention Center ("the JDC"). He was later taken to an area hospital after complaining of pain in his arm. His

3

arm was determined broken and was put in a cast.

On August 16, 2012, the State charged Nichols with one count of Class A felony burglary, two counts of Class B felony robbery while armed with a deadly weapon, and one count of Class B felony criminal confinement. The State also filed a criminal gang enhancement. On April 25, 2013, Nichols plead guilty as charged. Jasmine and Tikvah testified at Nichols's sentencing hearing on May 20, 2013, and both victims identified Nichols as the co-defendant that terrorized them and their children. The trial court sentenced Nichols's as follows: Count I, forty-five years with five years suspended and five years on probation; Count II, fifteen years with five years suspended and five years on probation; Count III, fifteen years with five years suspended and five years on probation; Count IV, fifteen years with five years suspended and five years on probation. Nichols was ordered to serve his sentences for Counts II, III, and IV concurrently but consecutive to his sentence for Count I, for an aggregate sentence of fifty years executed. The trial court dismissed the criminal gang enhancement.

In sentencing Nichols, the trial court found "a great many aggravators," Tr. p. 30, including: (1) that the harm, injury, loss or damage was significantly greater than the elements necessary to prove the offense, (2) Nichols's history of escalating criminal behavior, (3) that two of the victims were less than twelve years of age, (4) that the crime was a crime of violence committed in the presence of a person less than eighteen years of age, (5) Nichols's gang involvement, and (6) that one of the victim's was terrorized by Nichols dry firing a weapon at the back of her head. As mitigating factors, the trial court considered Nichols's guilty plea and acceptance of responsibility. The court also

4

considered Nichols's age as a "substantial mitigator." Appellant's App. p. 22. Where necessary, additional facts will be supplied below.

## DISCUSSION AND DECISION

### I. Abuse of Discretion

Nichols argues that the trial court abused its discretion in ordering an enhanced sentence because it relied on aggravating factors not supported by the record. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007) (stating that a trial court abuses its discretion where the record does not support the reasons for a sentence), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). Specifically, Nichols challenges the trial court's finding that the harm, injury loss, or damage suffered was significant and greater than the elements necessary to prove the offense. The trial court based this finding on the following facts: (1) a weapon was dry fired at Jasmine's head, (2) a threat was made to shoot Jasmine's sleeping three-year-old child if Jasmine did not cooperate, and (3) six-year-old V.C. was told he would be shot if he did not stop crying. Nichols concedes that sufficient evidence supports the occurrence of the acts but claims there is insufficient evidence that he was the co-defendant that committed them. We disagree.

At Nichols's sentencing hearing, Jasmine identified Nichols as the co-defendant who dry fired a weapon at the back of her head. Jasmine also identified Nichols as the co-defendant who stated, "If she gives you any s***, shoot the little girl in the bed[.]" Tr. p. 25. Further, Jasmine testified that she encountered Nichols in the "EPD lobby"[1] later that

---

[1] We assume "EPD" refers to the Elkhart Police Department or the JDC.

5

day and that Nichols made a point to engage her, asking "[H]ow y'all doing tonight?" Tr. p. 25. Jasmine also testified that, after Nichols left her bedroom, she heard him terrorizing Tikvah and V.C.

Tikvah also testified at Nichols's sentencing hearing and identified Nichols as the co-defendant who "terrorized" V.C. by threatening him with a gun. Tr. p. 22. When the trial court inquired as to the basis of Tikvah's identification of Nichols, Tikvah responded, "I believe that because I slammed his right arm in the door several times and when we saw him in court very soon after that his right arm was in a cast." Tr. p. 23. We note that the record independently supports that Nichols's arm was put in a cast shortly after arriving at the JDC.

We conclude that sufficient evidence supports the trial court's finding that Nichols was the co-defendant who dry fired a weapon at Jasmine's head, threatened to shoot Jasmine's sleeping three-year-old child, and threatened to shoot six-year-old V.C. In turn, these facts sufficiently support the trial court's finding as an aggravating factor that the harm, injury loss, or damage suffered was significantly greater than the elements necessary to prove the offense. Nichols's only claim otherwise relies on Jasmine's and Tikvah's statements to police and cites a discrepancy concerning the color of the hoodie the terrorizing co-defendant was wearing. However, as discussed above, Jasmine and Tikvah identified Nichols independent of his hoodie at his sentencing hearing.

Nichols also challenges the trial court's findings as aggravating factors that one of the victims was terrorized or tortured and two of the victims were under the age of twelve. Here, again, Nichols claims that there is insufficient evidence that he was the co-defendant

6

who dry fired a weapon at Jasmine's head and threatened to shoot Jasmine's three-year-old child and six-year-old V.C. Based on our analysis above, we conclude Nichols's claims to be without merit. The trial court did not abuse its discretion in ordering an enhanced sentence.

## II. Appropriateness of Sentence

Nichols also argues that his aggregate fifty-year executed sentence is inappropriate in light of the nature of his offenses and his character. Indiana Appellate Rule 7(B) provides that this court may revise a statutorily authorized sentence if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The appropriateness of a sentence "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). In evaluating the appropriateness of a sentence, the issue is not whether a different sentence would be more appropriate but whether the sentence imposed is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

Nichols claims only that his sentence is inappropriate because he pled guilty to the same four charges as his three co-defendants and received the longest sentence, despite being the youngest of the four co-defendants and "the lack of evidence that he played any greater role in the incident." Appellant's Br. 13-14. He relies on *Knight v. State*, 930

7

N.E.2d 20, 22-23 (Ind. 2010), where a seventeen-year-old defendant's sentence was reduced after his sixteen-year-old co-defendant's sentence was reduced on account of the co-defendant's youth. In *Knight*, however, the Indiana Supreme Court noted that the character of the two co-defendants and the nature of their offenses were the same. *Id.* at 22. "The only difference between the two is that [one] was seventeen years old at the time of the instant offenses and [one] was sixteen." *Id.* That is not the case here.

With regard to the nature of Nichols's offenses, we find the depraved manner in which they were committed to be significant. Not only did Nichols break into a residence to steal money and valuables, he also terrorized the residents. Nichols bound Jasmine's hands, covered her head with a shirt, and dry fired a weapon at the back of her head. Afterward, Nichols mockingly asked Jasmine, "[W]ant to try again?" Tr. p. 25. Nichols also threatened to shoot Jasmine's sleeping three-year-old daughter if Jasmine did not cooperate as well as six-year-old V.C. if he did not stop crying. The resulting trauma to V.C. is tragic.

> [V.C.] is very fearful, especially at night. He suffers from anxiety, depression, and flashbacks including auditory hallucinations. ... Bedtime is extremely difficult…. Every night he hears men's voices, or a loud banging noise, and thinks someone is trying to break in to our home. ... Without medication, and even sometimes with it, he does not fall asleep until well past midnight. He has missed school because of his sleep disturbances. … He said to [Tikvah] in the beginning of January, "Mom please call a doctor for me because I can't stand to hear these noises in my head. I don't want to always be afraid that we will have another robbery, and I just want to be happy again mom." He has begun treatment with a psychiatrist, and continues to see a therapist.

Appellant's App. p. 60.

The terrorizing and torturous nature of Nichols's offenses also reflects poorly on his

8

character. Again, Nichols mock executed a mother and threatened to kill two children. Nichols was also an active member of the Conservative Vice Lords gang prior to his arrest. Additionally, the record reveals that Nichols has a history of escalating criminal behavior. He was convicted of residential entry in 2010 and burglary in 2011 and 2012, all felonies if committed by an adult. In light of the depraved nature of Nichols's offenses and his poor character, we conclude that Nichols's aggregate fifty-year executed sentence is not inappropriate.

The judgment of the trial court his affirmed.

MATHIAS, J., and PYLE, J., concur.